FILED

07/14/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0743

DA 25-0743

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 151

IN RE THE PARENTING OF:

C.R.J.,

      A Minor Child,

COLBY R. JOHNSON,

      Petitioner and Appellee,

  and

JACLYN I. BECK,

      Respondent and Appellant.


APPEAL FROM:    District Court of the Ninth Judicial District,
                  In and For the County of Pondera, Cause No. DR 21-26
                  Honorable Brenda R. Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Christopher J. Gillette, The Law Office of Christopher J. Gillette, PC,
            Bozeman, Montana

      For Appellee:

            Jason T. Holden, Katie R. Ranta, Faure Holden Kenzel Terrazas, PC,
            Great Falls, Montana


                         Submitted on Briefs:  June 10, 2026
                                 Decided:  July 14, 2026

Filed:

                      _____
                                  Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 This case involves the parenting plan for C.R.J. Jaclyn Beck (Mother) appeals from the order of the Ninth Judicial District Court, Pondera County, limiting the testimony of her long-time counselor, Dr. Polly Peterson, Ph.D., as a sanction under M. R. Civ. P. 37. The District Court precluded Dr. Peterson from testifying about any treatment provided, or records created, after July 8, 2023—the date the court-appointed parenting evaluator, Dr. Michael Bütz, issued his report. Mother argues the sanction was unwarranted, disproportionate, and imposed without adequate procedural foundation. We disagree. The record demonstrates a deliberate and sustained refusal by both Mother and Dr. Peterson to comply with discovery obligations and with a court-approved stipulation requiring production of all treatment records to the evaluator. The District Court acted well within its broad discretion to impose a sanction tailored to the violation and necessary to preserve the integrity of the proceedings. We affirm.

¶2 We restate the issue on appeal as follows:

*Whether the District Court abused its discretion when it refused to allow Mother's counselor, Dr. Peterson, Ph.D., to testify about undisclosed mental health treatment and records.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 The parties have an extensive history of parenting difficulties and litigation in regard to such. Colby Johnson (Father) filed to establish a parenting plan nearly five years ago in December 2021. Since then, the parties have litigated several disputes and allegations including an interim parenting plan and amendment of the interim parenting plan, and in the process were ordered to complete a parenting evaluation. Mother suggested Dr. Bütz,

2

who was recommended to her by Dr. Peterson, to be the parenting evaluator. In February 2023, the parties stipulated to appointing Dr. Bütz as the parenting evaluator. As part of that stipulation—later adopted as an order of the court—Mother agreed her mental health providers "shall share all records" with the evaluator within ten days. Dr. Peterson did not comply. The record shows:

- In June 2022, Father requested through discovery that Mother identify expert and hybrid witnesses. Mother did not disclose Dr. Peterson as an expert or hybrid witness and did not produce Dr. Peterson's records or opinions at any time.

- Dr. Bütz met Mother for an in-office visit in early July 2023. His report, dated July 8, 2023, was filed with the court in September 2023. Thereafter, the parties filed a Stipulation that provided Mother "agrees that Dr. Bütz shall consult with her mental health provider(s) within 10 days of this Stipulation, and that [Mother's] mental health provider(s) shall share all records with Dr. Bütz within 10 days of this Stipulation[.]"

- The Stipulation was "adopted and approved as an order of th[e] [c]ourt as being in the best interests of the child and the parties shall comply with the Stipulation."

- Dr. Peterson provided no records to Dr. Bütz until December 2023 or January 2024 (if at all), months after his report was complete, despite knowing Dr. Bütz requested them.[1]

---

[1] From the record, it is unclear whether Dr. Peterson ever provided any of her treatment records to Dr. Bütz. Dr. Peterson did not provide any records to Dr. Bütz prior to his report of July 8, 2023. There is conflicting information that she may have provided some records to Dr. Bütz in December 2023 or January 2024, but it is uncontested she did not provide any records to Dr. Bütz thereafter

- Dr. Peterson testified she received a release signed by Mother along with a written request from Dr. Bütz for her treatment records.

- Dr. Peterson acknowledged she understood the purpose of the request.

- Dr. Peterson nonetheless refused to produce the records because she "did not trust" the evaluator and feared her records would be "misused."

- Mother knew of this refusal and did not supplement discovery.

- No updated records were ever produced to the evaluator or to Father.

- No protection order or other limitation in producing the records was sought by Mother or Dr. Peterson.

¶4 At the final parenting plan hearing, in response to the District Court's inquiry, Mother's counsel advised the court the grounds for not producing the records to be, "Dr. Peterson was not going to produce those records." The District Court found Dr. Peterson's and Mother's failure to provide treatment records intentional, prejudicial, and in violation of both the discovery rules and the court's own order. As a sanction, the District Court precluded Dr. Peterson from testifying about any treatment provided or records created after July 8, 2023—the date of Dr. Bütz's report.

¶5 Mother appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶6 District courts have broad discretion to impose discovery sanctions under M. R. Civ. P. 37(b)-(f) "[b]ecause they are in the best position to assess the nature and effect of

and none were provided by Mother in response to or in supplementation of her discovery responses.

4

discovery abuses[.]" *Mont. State Univ.-Bozeman v. Mont. First Judicial Dist. Court*, 2018 MT 220, ¶ 15, 392 Mont. 458, 426 P.3d 541 (citations omitted). However, a district court's discretion regarding sanctions is not unfettered and "[o]rders imposing or denying discovery sanctions are subject to review for an abuse of discretion." *Mont. State Univ.-Bozeman*, ¶ 15 (citation omitted). A district court abuses its discretion if it bases a discretionary ruling on a mistake of law, clearly erroneous finding of fact, or arbitrary reasoning, lacking conscientious judgment or exceeding the bounds of reason, resulting in substantial injustice. *Mont. State Univ.-Bozeman*, ¶ 15. The determination as to whether a district court abused its discretion is a question of law subject to de novo review. *Mont. State Univ.-Bozeman*, ¶ 15. "Whether a district court correctly interpreted or applied governing law to pertinent facts is a question of law." *Mont. State Univ.-Bozeman*, ¶ 15 (citations omitted).

¶7 In evaluating whether a sanction under M. R. Civ. P. 37 is an abuse of discretion, we consider: (1) the extent and nature of the discovery abuse; (2) the prejudice caused; and (3) whether the sanction is proportionally related to the violation. *Mont. State Univ.-Bozeman*, ¶ 20 (citations omitted).

## DISCUSSION

¶8 *Whether the District Court abused its discretion when it refused to allow Mother's counselor, Dr. Peterson, Ph.D., to testify about undisclosed mental health treatment and records.*

**Legal Framework**

¶9 Discovery "enables courts and parties to determine the truth of a given matter so that cases may be resolved justly." *Peterman v. Herbalife*, 2010 MT 142, ¶ 17, 356 Mont.

5

542, 234 P.3d 898. This Court has "repeatedly articulated a low-tolerance approach toward discovery abuse, encouraging district courts not to give transgressors second chances but rather to impose sanctions." *Peterman*, ¶ 17 (collecting cases).

¶10 M. R. Civ. P. 26(b)(1) provides in relevant part:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. The information sought need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 34 requires production of documents within the scope of Rule 26(b) upon request. Rule 26(e) requires supplementation when prior responses become incomplete or inaccurate. Rule 37(c)(1) provides a sanction for failing to provide information requested through discovery:

> If a party fails to provide information requested in accordance with these rules or fails to disclose information regarding opinions of a witness as required by Rule 26(b)(4), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

¶11 Under Rule 37(b)(2)(C), when a party fails to obey an order to provide discovery, the district court may impose sanctions, including dismissal of the action. *Peterman*, ¶ 18. District courts enjoy considerable leeway in sanctioning discovery abuses as they are better positioned than we are to evaluate the conduct and good faith of parties during discovery. *Peterman*, ¶ 23. In reviewing sanctions imposed by a district court, we determine if they are roughly proportionate to the gravity of the abuse and the inconvenience on the other party and the court. *Peterman*, ¶ 23. Neither the language of Rule 37(b)(2) nor our

precedent requires a district court to expressly warn a party before imposing sanctions. *Peterman*, ¶ 23.

**Intentional Discovery Violation Occurred**

¶12 The record supports the District Court's finding that Mother and Dr. Peterson intentionally withheld treatment records created after Dr. Bütz's July 8, 2023 report. Dr. Peterson admitted the decision was hers, motivated not by privilege, burden, or confusion, but by her personal distrust of the evaluator. Mother admitted she knew of the refusal. Neither requested an order of protection or any limitation of disclosure of Dr. Peterson's records. This is not a case of inadvertence, oversight, or misunderstanding. It is a case of purposeful non-compliance with both discovery obligations and a court-approved stipulation.

¶13 The withheld records concerned Mother's current mental health treatment, a central issue in the parenting evaluation and in the District Court's assessment of C.R.J.'s best interests. Dr. Bütz testified he had no information about Mother's progress, if any, as he never received the records. The District Court found the absence of updated information was a "black hole" in the evidence created by Mother.

**Prejudice Caused**

¶14 Mother argues the prejudice was minimal as Dr. Peterson could testify from memory. But Rule 37 does not protect from surprise alone; it protects the opposing party's right to prepare, to cross-examine, and to test the basis of the expert's opinions. *See Mont. Power Co. v. Wax*, 244 Mont. 108, 110-12, 796 P.2d 565, 566-67 (1990) (affirming exclusion where nondisclosure impaired effective cross-examination). Here, Father could

7

not meaningfully test Dr. Peterson's opinions without the underlying records. The prejudice was real and substantial.

**Sanction Appropriate**

¶15 Sanctions, such as dismissal or default, are tools that may be used against parties who openly disregard the discovery process or disobey court orders, *Ewalt v. Scott*, 206 Mont. 503, 506-07, 675 P.2d 77, 79 (1983); *Mont. State Univ.-Bozeman*, ¶ 21, and exclusion of evidence is expressly authorized by Rule 37(c)(1) and is appropriate where a party fails to disclose information requested in discovery.

¶16 The District Court did not exclude Dr. Peterson entirely. It permitted her to testify fully about treatment occurring and records produced through July 8, 2023. The court limited testimony about undisclosed treatment and opinions formed thereafter. This sanction directly corresponded to the nature and scope of the violation, protected the integrity of the proceedings, avoided rewarding intentional non-compliance with discovery requests and a court-approved stipulation, and preserved the court's ability to consider all properly disclosed information. This is precisely the type of measured, proportional response Rule 37 contemplates.

¶17 Mother argues the District Court should have imposed a lesser sanction or allowed cross-examination to cure any prejudice. However, the court was not required to accept a remedy that rewards intentional withholding of records and forces the opposing party to litigate in the dark. The District Court's reasoning was conscientious and grounded in the facts. It recognized the importance of the missing information, acknowledged the intentional nature of the refusal, tailored the sanction to the precise period of

8

non-disclosure, and preserved the remainder of Dr. Peterson's testimony. This is not arbitrary decision-making but careful exercise of judicial discretion in the face of intentional discovery abuse.

## CONCLUSION

¶18    When confronted with deliberate refusal to comply with discovery obligations and a court-approved stipulation requiring disclosure of mental health treatment records central to the issues in dispute, the District Court properly acted within its broad discretion under Rule 37 to impose a sanction proportionate to the violation and necessary to protect the fairness of the proceedings.

¶19    Affirmed.

/S/ INGRID GUSTAFSON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JIM RICE